```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  JACKSONVILLE DIVISION
```

TAVARES ANTONIO MCDUFFIE,

       Petitioner,

vs.                              Case No. 3:10-cv-1012-J-37MCR

SECRETARY, DOC, et al.,

       Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner Tavares Antonio McDuffie initiated this action by filing a *pro se* Petition (Doc. #1) (hereinafter Petition) for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He also filed an Appendix for Petition 28 U.S.C. § 2254 (Doc. #2) and a Memorandum of Law in Support of 28 U.S.C. 2254 (Doc. #3). The Petition challenges a 2008 state court (Clay County) judgment of conviction for trafficking in cocaine while armed with a firearm and carrying a concealed firearm. One ground is raised in the Petition:

> The detention of appellant was beyond the scope and purpose of the stop, and was not based on any articulable, well founded, particularized suspicion that Appellant was involved in or about to be involved in criminal activity, thus rendering the detention unreasonable and consequently violating appellant's rights protected by the Fourth and Fourteenth Amendment[s].

Petition at 8.

Respondents filed an Answer in Response to Order to Show Cause (Doc. #25) (hereinafter Response) and an Appendix (Doc. #26).[1] Petitioner filed a Traverse to Answer in Response to Order to Show Cause (Doc. #27).  See Order (Doc. #14).  One ground for habeas relief is raised, and the Court is mindful of its responsibility to address this ground, Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992); however, no evidentiary proceedings are required in this Court.[2]

## II.  Standard of Review

The Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 131 S.Ct. 770, 784 (2011).  The exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts.  Id. at 785.

---

[1] The Court hereinafter refers to the exhibits in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Exhibit.  Otherwise, the page number on the particular document will be referenced.

[2] An evidentiary hearing was conducted in the state court on the Motion to Suppress.  See Ex. B at 397-400, Ex. C at 401-65.

- 2 -

There is a presumption of correctness of state courts' factual findings unless rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption applies to the factual determinations of both trial and appellate courts. See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

### III.  Timeliness

Respondents calculate that the Petition was timely filed. Response at 3. The Court accepts this calculation.

### IV.  Ground One

Petitioner claims that the Fourth Amendment was violated when the trial court denied a pre-trial motion to suppress. In Defendant's Motion to Suppress, he complained the detention was longer than necessary to issue traffic citations and sought the suppression of all evidence obtained by the police. Ex. A at 26-29. An evidentiary hearing was conducted by the trial court on the motion. Ex. B at 397-400, Ex. C at 401-65. Officer Mark Wilson, Officer Elvis Guzman, Deputy Jonathan Parales, and Deputy Steve Parker testified for the prosecution. The Petitioner testified in support of the motion, and Deputy Parales was called by the defense. The court heard argument, and the motion to suppress was denied. Id. at 465. The trial court said:

> THE COURT:  All right.  I deny the motion to suppress.  I think each one of these cases is somewhat unique and stand on their own facts.  This case was unique in the sense that in writing the citations he had

>    additional duties that normally doesn't [sic] occur.
>
>    That is he was not only trying to write the two tickets but he was also trying to keep the family members away from the car. And there was some suspicion here that this defendant had past drug history and didn't want the people around the car to get anything out of the car as well as anything else that might hinder the investigation.
>
>    So he spent a certain amount of time trying to keep the family members away from the vehicle instead of specifically writing the tickets. There is nothing unreasonable about it and he was still writing the tickets when the dogs arrived on the scene.
>
>    So the motion to dismiss is denied.

Ex. C at 465.

On September 26, 2007, a brief written order memorializing this ruling was entered by the court. Ex. A at 39. Thereafter, on October 9, 2007, a thorough and complete order was entered, *nunc pro tunc* to September 26, 2007. Id. at 46-50. First, the court provided a summary of the evidence that was presented and considered. Id. at 46. This included the witnesses who testified at the evidentiary hearing and the four items of evidence introduced by the defense: Officer Wilson's Police Report, the Dispatch sheet, the Clay County Sheriff's Office Dispatch Audio, and the Green Cove Springs Police Department's Dispatch Audio. Id. Next, the court made its findings of fact:

>    On May 8, 2007, at approximately 9:37 p.m., Officer Wilson was patrolling on Oakridge Avenue in Green Cove Springs when he

- 4 -

observed a four-door, silver Mercury with a broken tag light. Officer Wilson activated his emergency lights and followed the Defendant for two blocks until the Defendant stopped on the 1300 block of East Street. Officer Guzman was the back-up officer and parked his vehicle behind Officer Wilson's. Officer Wilson approached the Defendant and asked for his driver's license, registration, and insurance. He told the Defendant that he stopped him for the broken tag light and that he would be cited for not wearing a seatbelt. Officer Wilson also asked the Defendant why he did not immediately pull over. Officer Wilson further testified that the Defendant did not do anything to impede or delay the stop.

While Officer Wilson was talking to the Defendant, 6 to 10 of the Defendant's family member[s] and friends approached the vehicle. Officer Wilson and Officer Guzman testified that the Defendant's family and friends were yelling and cursing at the officers and asking why the Defendant had been stopped. They were also shouting instructions to the Defendant. They stood about 6 feet from the Defendant's vehicle until the officers moved them to about 10 to 15 feet away. Initially, Officer Guzman helped Officer Wilson with crowd control, however, Officer Guzman had to leave to respond to a nearby disturbance. Before he left, Officer Guzman told Officer Wilson that he recognized the Defendant from a previous contact and suggested that they call for a canine unit because he had reason to believe that the Defendant was dealing narcotics. While Officer Wilson checked to see if the Defendant had any outstanding warrants, Officer Guzman called for a canine unit. Officer Guzman was told by Dispatch that it would take 15 minutes for a canine unit to arrive. The canine unit was dispatched at 9:48 p.m.

While Officer Guzman responded to the other call, Officer Wilson was left to deal with controlling the crowd and writing the citations for the Defendant. Officer Wilson

> testified that there was no other officer available to provide assistance. He further testified that the Defendant's family and friends were delaying his ability to write the citations and that he had to tell them to move back from the Defendant's vehicle at least 7 times during the stop. Officer Wilson testified that at the time of this stop, he had 10 months' experience on the job, and he averaged about 15 citations a month. He also testified that his average traffic stop takes about 17-20 minutes and that the Defendant's stop took about 20-25 minutes.
>
> Officer Guzman returned to the scene at 10:01 p.m. At 10:02 p.m., when the CCSO Canine Unit officers arrived, Officer Guzman [sic] was writing the second citation.[3] Approximately 25 minutes elapsed from the time of the initial stop of the Defendant and the arrival of CCSO Deputies Parales and Parker with the canine unit.
>
> The Defendant testified that while his family was concerned about why he was being stopped, they did not curse, and the officers only had to ask them to move back once. However, he did admit on cross examination that his family and friends stayed at the scene during the entire traffic stop.

Ex. A at 46-48.

Finally, the court made its conclusions of law. The court found the following:

> The Defendant claims that Officer Wilson intentionally delayed in writing the two citations to allow time for the canine unit to arrive at the scene. The Defendant avers that the citations were basically identical and

---

[3] Both officers attested that Officer Wilson was writing the citations. Ex. C at 406, 426-27. Apparently, this is simply a scrivener's error as the trial court recognized that Officer Wilson was left to deal with the crowd and the writing of the citations. See Ex. A at 47.

that an officer with Officer Wilson's experience should have been able to write the citations in less than 25 minutes. The Defendant argues that this intentional delay resulted in an unconstitutional stop pursuant to Sparks v. State, 842 So.2d 876 (Fla. 2d DCA 2003) (holding that a 20-minute delay between the writing of a citation for a non-working headlight and the arrival of a canine unit was an illegal detention where the officer completed writing the citation before the arrival of the canine unit). The Defendant now asks this Court to suppress the 9mm Glock pistol found between the driver's seat and the center console and the over 29 grams of cocaine in the glove compartment that the officers discovered in the vehicle after the canine unit dogs detected narcotics.

This Court finds the Defendant's case distinguishable from Sparks. While it is true that Officer Wilson's average time for writing citations was between 17-20 minutes, this Court finds that the officer had additional duties during this stop. He had to keep 6-10 members of the Defendant's family away from the Defendant's vehicle. The family members were uncooperative, yelling and cursing at times at Officers Wilson and Guzman who repeatedly asked the family members to move back. Additionally, Officer Wilson spent at least 5 minutes during the stop dealing with these crowd control issues *without the support of another officer*, when Officer Guzman was called to respond to another disturbance. This Court also notes that Officer Wilson's stop of the Defendant was only about 5 minutes longer than his average traffic stop. Therefore, it was not unreasonable that Officer Wilson took 25 minutes to conduct the Defendant's traffic stop when he also had to deal with controlling the Defendant's family and friends. Thus, under the totality of the circumstances, this Court finds that Officer Wilson's stop of the Defendant was reasonable. See Sands v. State, 753 So.2d 630 (Fla. 5th DCA 2000) (holding that stop of vehicle was not unnecessarily prolonged where canine unit arrived fifteen minutes after traffic stop and

> where officer was still writing ticket for improper display of a license tag when canine unit arrived).

Ex. A at 48-49. Making these findings of fact and conclusions of law, the court denied the motion to suppress. Id. at 49.

Two trials ended in mistrials. Ex. A at 194-200, Ex. B at 201-40; Ex. B at 242-346. Prior to the third trial, on December 4, 2007, Petitioner filed a Renewed Motion to Suppress, arguing that Officer Wilson accomplished traffic stops in less than seventeen minutes, and that the delay in completing the writing of the citations in Petitioner's traffic stop was unreasonable. Ex. A at 74-98. When defense counsel attempted to present his renewed motion, the court inquired had he not already heard the suppression motion. Ex. B at 353. The trial judge stated he would not hear the motion again. Id. Later on, defense counsel stated that his renewed motion to suppress was based on new evidence. Id. at 361. Counsel explained that after obtaining Officer Wilson's documented citations for a ninety-day period and removing all cases which resulted in arrests, defense counsel discovered that Officer Wilson was able to complete standard traffic stops in less than fourteen minutes. Id. at 362-64. The court asked how long the stop took in Petitioner's case, and counsel responded "[u]pwards of 25 minutes[.]" Id. at 364. Defense counsel argued that the delay in Petitioner's case was unreasonable. The trial court stated: "I have already ruled on it. It's denied." Id.

At the third trial, the state stipulated to the information that defense counsel provided supporting his renewed motion to suppress, and asked the court to rely on the previous testimony that was given under oath in making the ruling on the motion to suppress. Ex. C at 484. The court denied the motion for rehearing the motion to suppress. Id. at 484-85.

On direct appeal, Petitioner raised the following issue: "Appellant was unreasonably and unlawfully detained by the arresting officer, who chose to wait for a canine unit to conduct a search, and delayed his completion of the traffic citations in order to facilitate the arrival of the canine unit." Ex. E at ii. The First District Court of Appeal affirmed per curiam on September 2, 2009. Ex. G. The mandate issued on September 18, 2009. Ex. H (Exhibit A, First District Court of Appeal Case Docket at 2). Petitioner submitted a Petition for Writ of Certiorari in the Supreme Court of the United States. Ex. H. The petition was denied. Ex. I.

The Supreme Court of the United States recently explained: "[t]he Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." United States v. Jones, 132 S.Ct. 945, 949 (2012). The Eleventh Circuit has recognized that even a brief stop of a motor vehicle by the police constitutes a

Fourth Amendment seizure. United States v. Durham, No. 12-11583, 2012 WL 4757930, at *3 (11th Cir. Oct. 5, 2012) (per curiam) (not selected for publication in the Federal Reporter). However, a traffic stop is reasonable if the police have probable cause to believe a traffic violation occurred. United States v. Whitlock, No. 12-10989, 2012 WL 5065667, at *3 (11th Cir. Oct. 19, 2012) (per curiam) (not selected for publication in the Federal Reporter) (citation omitted).

The issue in this case goes to the duration of the traffic stop. Generally, following a stop, the investigation should be reasonably related in scope to the circumstances which justified the stop. Id. at *4 (citing United States v. Ramirez, 476 F.3d 1231, 1236 (11th Cir.), cert. denied, 551 U.S. 1108 (2007)). In effect, the duration should be limited to the time necessary to effectuate the purpose of the stop, including prolonging the detention to investigate the driver's license and vehicle registration and to conduct a computer search. Id. (citation omitted). A Fourth Amendment violation would occur if the police undertake an unreasonably prolonged traffic stop and "conduct a dog sniff and uncover contraband[.]" Id. (citing Illinois v. Caballes, 543 U.S. 405, 407-08 (2005)). But,

> a dog sniff that does not unreasonably prolong the traffic stop is not a search subject to the Fourth Amendment, and based on this principle, the Supreme Court has "rejected the notion that the shift in purpose from a lawful traffic stop into a drug investigation was

> unlawful because it was not supported by any reasonable suspicion."

Id. at *4 (citing Muehler v. Mena, 544 U.S. 93 (2005)).

Indeed, traffic stops of fourteen minutes, United States v. Purcell, 236 F.3d 1274, 1279 (11th Cir.), cert. denied, 534 U.S. 830 (2001), to fifty minutes duration, United States v. Hardy, 855 F.2d 753, 761 (11th Cir. 1988), cert. denied, 489 U.S. 1019 (1989), have been approved.  Rigid time limitations and bright-line rules have been rejected and "[r]easonableness is measured by examining the totality of he circumstances." United States v. Purcell, 236 F.3d at 1279 (citation omitted).

Although the Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects," including vehicles, from unreasonable searches and seizures, the Fourth Amendment itself does not have an exclusionary rule. Davis v. United States, 131 S.Ct. 2419, 2426 (2011).  Indeed, exclusion is not an individual's constitutional right, and the prudential doctrine of exclusion is not meant to redress the injury to the individual caused by an unconstitutional search.  Id.  (citing Stone v. Powell, 428 U.S. 465, 486 (1976)).  Instead, the exclusionary rule's purpose is to deter future Fourth Amendment violations by the police.

With this in mind, the Court will review ground one of the Petition.  Respondents assert that Petitioner's claim is barred from consideration pursuant to Stone v. Powell, 428 U.S. 465

(1976). Response at 11. Upon a thorough review of the record, the Court finds that Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue and took full advantage of that opportunity. A pre-trial motion to suppress was filed, as well as a renewed motion to suppress. A hearing was conducted on the motion to suppress, and the arresting officers and the canine officers testified. Additionally, Petitioner testified. The trial court made essential findings of fact. see Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990), cert. denied, 502 U.S. 898 (1991), and the appellate court affirmed the trial court's decision.

Even taking into account the renewed motion to suppress, the state stipulated to the evidence presented by the defense in its renewed motion but asked that the trial court take into account the sworn testimony received during the suppression hearing, and the trial denied the renewed motion. Based on the record before the Court, the trial court took into account the totality of the circumstances presented during the traffic stop as the court found "it was not unreasonable that Officer Wilson took 25 minutes to conduct the Defendant's traffic stop when he also had to deal with controlling the Defendant's family and friends." Ex. A at 49. Here, the trial court concluded that the officer's testimony was credible, and the officer was "dealing with these crowd control issues" and was still writing the second citation when the canine unit arrived. Id.

Ground one is not cognizable in a federal habeas corpus proceeding because Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue and took full advantage of that opportunity. The trial court made explicit findings on matters essential to the Fourth Amendment issue. Under the principles of Stone v. Powell, federal habeas review of Petitioner's claim is precluded. See Streets v. Sec'y Dep't of Corr., No. 8:10-cv-1131-T-33TGW, 2011 WL 3171263, at *12 (M.D. Fla. July 27, 2011) (finding "Stone bars federal habeas review" of the Fourth Amendment claim when "Florida clearly afforded [Petitioner] a full and fair opportunity to litigate" his claim). Thus, ground one, asserting a Fourth Amendment violation, is barred and will not be addressed by this Court.

### V.  Certificate of Appealability

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted. See Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve

encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED,** and this action is **DISMISSED WITH PREJUDICE.**

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.** Because this Court has determined that a certificate of appealability is not

- 14 -

warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of November, 2012.

ROY B. DALTON, JR.
United States District Judge

sa 11/7
c:
Tavares Antonio McDuffie
Ass't A.G. (Guard)